By the Court—Woodruff, J.
By the true construction of the contract between the parties to this action, the plaintiffs were to deliver the stipulated quantity of cement either at Rondout or at the City of New York, at the option of the defendant. Upon delivery, the plaintiffs were entitled to payment, according to the terms of-the stipulation, “ at a credit of thirty days from the time of delivery, to be approved paper. ” But such delivery, although it entitled the plaintiffs to payment at the stipulated rates apd credit, was ndt to be an absolute and unconditional delivery which should be final between the parties, so that the reception of the cement by the defendant, and its transportation to Pensacola, was a final acceptance of the cement as performance of the contract by the defendants. By the terms of the contract, the cement was to be “ subject to the inspection of the United States Government inspector,” and this, in connection with the further declaration in the contract that “ the above cement is for the Pensacola Navy Yard,” shows that the delivery of the cement was intended to be, and was, in fact, qualified by the condition that although delivered in Rondout or New York to the vessels referred to, and for transportation to Pensacola, such delivery and the defendant’s acceptance were subject to inspection by the proper officer of the United States who was charged with such duty.
In this view of the meaning and construction of the contract, if the cement did not pass inspection, by reason of any failure of the defendants to furnish the proper quantity in such packages as the contract called for, then the plaintiffs had not performed the contract on their'part.
The delivery and acceptance were conditional, and the rejection of the cement for just cause would defeat both.
*8 But we concur in the opinion of the Referee, that the frame of the contract is such that the stipulations of the parties were independent. The time of payment being fixed with reference to the actual delivery, the plaintiffs were entitled to sue for and recover the stipulated price on the expiration of the stipulated credit, without waiting to learn whether the cement had arrived in Pensacola, or even though it had never arrived there, and, a fortiori, without waiting to learn whether the cement was approved on inspection.
The delivery of the cement, and its acceptance by the defendant or the agents whom he employed to receive it, and the expiration of .the term of credit, made the plaintiff’s cause of action complete. The condition upon which the delivery and acceptance might fail, should it after-wards happen, would entitle the defendant to reclamation, but the possibility that the cement might be rejected, would not be any defense.
In this sense, the agreement of the defendant to pay for the cement was independent; although it did depend upon the delivery of the cement, it did not depend upon its passing inspection as a condition precedent to his obligation to make payment.
These views, in their application to the case before us, do not very materially differ from the conclusions of the Referee, and do not necessarily lead to any different result. This consequence, however, seems to us to follow; the failure of the cement to pass inspection, if that happened before suit brought, might be used as a defense to the action. We think it would avail the defendant as a failure of the consideration of his contract to pay therefor ; and that the defendant would not be confined to a counterclaim, for his protection. To treat it as a strict counterclaim, is to limit the defendant to the use of this rejection of the cement as an independent cause of action in his own favor, to be governed alone by the rules applicable to it, if he sued the plaintiffs for a breach of their contract.
*9 We think the defendant not so restricted. Eor example, suppose, by reason.of the failure of the plaintiffs properly to pack the cement, no part of it had been accepted, and the defendant had made a proper tender of redelivery thereof to them, as not satisfying the condition upon which it it was delivered and accepted, and the plaintiffs thereafter brought suit? The defense would have been perfect; not necessarily or solely on the ground that the defendant had sustained damages to the extent of the contract price—for if the cement was of any considerable value, that would not be true—but on the ground that the condition on which the delivery and acceptance were made had failed, and so the consideration for the defendant’s agreement to pay had failed, and he was therefore not bound to" pay anything. Indeed, in such case, he would not be bound to show that he had sustained any damage.- He was not bound to retain the cement if it did not satisfy the condition, and having returned that which was conditionally received, he was not liable at all. He, in such case, is in the position of one who, on the breach of the contract by the other party, rescinds and restores such party to the condition in which he was before the breach. This view of the rights of the parties is fully sustained we think, by Grant v, Johnson, (1 Seld., 247,) and does not conflict with Tompkins v. Elliot, (5 Wend., 496.)
In such case the party not in fault might, if he choose, set up the breach of contract by the other as a cause of action in his own behalf, and so make it the subject of counterclaim. What we mean is, that if the condition failed before action brought, he would not be confined to this, nor be bound to give proof of damages; he might, (if he had returned the goods or made a proper tender thereof,) use the failure of the condition as a defense to. the action. (Wiltsie v. Northam, 3 Bosw., 169 ; Gleason v. Moen, 2 Duer, 644.)
And, on the other hand, it is obvious that if he had in fact paid for the goods at the end of thirty days, and the cement was thereafter properly rejected on inspection, he *10 would necessarily have been driven to an action. But the same distinction would have been applicable to that as is above suggested. . He might return or tender the goods, and sue for and recover back the consideration money ; or he might sue for damages. In the first case he would not be bound to prove damages; and in the second he must show what loss he sustained. *
The defendant, by his answer herein, has set up the facts upon which he relies, both as a defense and also as constituting an affirmative cause of action or' counterclaim. And the inquiry before the Referee was properly whether he had established his case in either aspect.
. Fiest. The Referee finds that the cement was not packed in the manner required by the contract. But, as the delivery was made and the cement accepted, subject to inspection, that fact bécomes of no materiality, provided it passed inspection. The provisions of the contract itself enabled the plaintiff to pack in other than the stipulated barrels,, if the United States would accept it. The Referee, therefore, properly held that the defendant, by accepting the cement, waived the provision prescribing oak barrels, resting, however, upon the other condition that the cement should pass the proper inspection. The result was that all of the cement, except three hundred barrels, did pass inspection, and as to the cement so approved, there is an end of all question.
Second. Three hundred barrels did not pass inspection. In respect to these, what were the rights of the defendant ? Clearly, either to returner tender them to the plaintiffs, or to rely on his claim for damages. He might do either. But the Referee finds that the defendants did not return the .three hundred barrels, nor notify the plaintiffs to take them ■back, and if not, the defendant cannot make use of this ¡breach of condition as a failure of the consideration of his .contract, or as any ground for refusing to pay therefor. And the Referee has also found that the defendant has not shown what disposition was made of them, or what damages .he sustained by reason of the defective packing, or,their not *11 passing inspection. And if not, then the defendant wholly-failed to establish any affirmative cause of action entitling Mm to any abatement from the plaintiff’s recovery. In strictness- he was, perhaps, entitled to nominal damages, but to that only.
Unless, then, the findings of the Eeferee are contrary to the evidence, his conclusions of law are correct; for, although the view we have taken of the rights of the parties differs somewhat from that expressed by the Eeferee, the > effect of its application to this case, upon the facts found, is substantially the same.
The defendant, if he proposed to claim that the three hundred barrels of cement should not be allowed to the plaintiffs at all, should have proved that he returned them or offered to do so. By this we do not mean to say that he was bound to transport them back to New York and redeliver them there. Under the circumstances of this case, he was probably not bound to do so. The property was delivered by the plaintiffs with a view to, its being-carried to Pensacola, and it was their fault that it did not satisfy their contract. But the defendant should at least have notified them, not only that it did not pass -the: inspection, but that the cement was at their disposal, or was subject to their orders, and in some manner (adapted to its then situation) have furnished them with the means of controlling it, so that they might have caused it to be returned to New York, or have directed its disposal as they saw fit. Perhaps the language of the Eeferee, in his finding, sufficiently defines the defendant’s duty in this respect; he should have “notified the plaintiffs to take it back.”
He did not do this; he, by his agent, the master of the vessel, caused one hundred and eighty-eight barrels of the rejected cement to be sold, and what disposition was made of the residue the Eeferee finds was not shown. On looking at the evidence we find it testified that after its rejection this residue of one hundred and twelve barrels was taken to a warehouse. How long it remained there *12 is not stated. The defendant, therefore, did not return or offer to return the rejected cement, nor notify the plaintiffs to take it, nor place it in their power to do so.
The only testimony which in this respect is supposed to conflict with the finding of the Referee is that of the defendant himself, who" says that after he heard of the rejection of the cement, he told one of the plaintiffs “that the cement was rejected at Pensacola, a part of it;'that the Government wouldn’t receive it,. and that it lay there.” In relation to this testimony two observations are pertinent: Much of the testimony of the defendant, embracing some of the particulars of this alleged conversation, was directly contradicted by the. plaintiffs, and how far the Referee deemed the testimony entitled to credit, we cannot say. But second, this was no proper tender of the cement to the plaintiffs, and it did not furnish them the means of obtaining it. On the contrary, it gave them no information of the number of barrels; it was not acted upon by the defendant himself as an offer to give up the cement to the plaintiffs. He sold the larger portion thereof, and there has never been a moment when, by reason of anything said or done by the defendant, the -plaintiffs could have taken into their own possession one barrel of the cement. If the defendant had intended that they should do so, it was his duty to have done so much, as, by a clear election on his part to give up the possession, would have enabled them to procure it. We cannot say that the finding of the Referee is in this respect against the evidence.
; In regard to the finding that the defendant did not show that he had sustained any damage, we think the Referee was clearly right. The defendant did not prove for how much the one hundred and eighty-eight barrels were sold, nor what had been done with the residue, nor whether it was still on hand, nor what would be the cost of other suitable cement delivered at Pensacola, nor how in any manner he sustained damages, or to what extent; and his right to .nominal damages would not call for any interference With the judgment.
*13 . Unless, then, some error was committed in receiving evidence objected to by the defendant, or in rejecting evidence offered by him, the judgment should be affirmed.
We have examined the numerous exceptions taken by the defendant, and are constrained to say, that we think that none of them require us to reverse the judgment. Most of his Exceptions are disposed of by the views already expressed, as the objections out of which they arose proceed upon the idea that the receipt on board the defendant’s vessels was not a delivery or an acceptance entitling the plaintiffs fo demand payment.
Other exceptions relate to proof tending to show that the rejection of the cement was caused by injury thereto, resulting from careless handling of the barrels on the part of the defendant. Such proof, we think clearly competent, and yet if it were not so, it wrought no prejudice, as the Referee imputes the rejection of the cement wholly to the plaintiffs’ neglect to pack it in. such barrels as the contract required.
The plaintiffs’ conversation with the defendant, was in its nature competent evidence, and it was not irrelevant to the controversy. We see no just ground for the defendant’s objection thereto, and Ms exception.
The correspondence with the officers of the Government does not appear to have had the slightest influence on the decision ..since the Referee found the plaintiffs in fault, and it couM not under Ms finding of the facts affect the view we have above taken of the rights of the parties. But it could not have been said in advance, that it was wholly irrelevant, when the contract itself was made subject to modification in respect to the kind of barrels to be used ‘ if the consent of the Government was obtained.
Other testimony was offered by the defendant to prove conversations antecedent to or contemporaneous with the making of the written contract. This evidence was, we think, within the rule that all such conversations and negotiations are to be deemed merged in the written instrument, and they could not be permitted to alter or enlarge *14 or affect the obligations of'either party. The proof was, .therefore, properly rejected.
And this evidence was proposed to be given in connection with the contract of the government, as a means of showing that the plaintiffs in effect undertook to perform that contract. The answer to this, so far as not already last above given, is that the written contract confined no such assumption, and it is clear and intelligible, and could not be enlarged by parol.
There was an offer by the defendant, in very broad and comprehensive terms, to “ give evidence of money paid by him to remove the worthless part of .the rejected cement, which was required by his contract with the government, before he could be paid for any of that which was received.” The offer assumed that the cement was worthless, which ..the defendant had not proved nor attempted to prove: it also proposed to make the terms of his contract with the government a ground for imposing these expenses on the-plaintiffs. But besides these suggestions, if the defendant had offered the plaintiffs this portion of the cement, or required them to take it back, possibly the expense of removing and - taking care of the cement would have been chargeable to them. And had the defendant proved the disposition made of the cement, and showed himself entitled to damages, the expenses of making the removal and sale might have been taken into view; but keeping the cement and- not accounting for its disposal, the naked evidence- of the expense of removing it would furnish no ground to claim those expenses from the plaintiffs. • The claim to recover the freight of the rejected cement is liable to the same answer.
Another exception was taken by the defendant. It was to the rejection of this question put to the defendant: “How much demurrage was demanded of you by the captain of the Burrett for detention at Bondout^” .This vessel ■was one which went to Bondout to receive cement. It was claimed to have been proved, that the plaintiffs agreed with the captain of the vessel that if. they detained her *15 over the time within which they agreed to load her, they would pay the demurrage, and the witness said he thought they agreed to load-her in two or three days.
If it be assumed that the agreement by the plaintiffs to this effect was sufficiently proved, and was sufficiently definite to be binding, still it was an agreement with the captain and not with the defendant, and so distinctly testified. And, again, what the captain demanded was not the inquiry, even if the agreement had been made with the defendant. The proper question was, how long was the vessel detained, and how much was the demurrage for that delay.
In regard to the only exception not covered by the observations already made, viz., the offer of the defendant at the close of the trial to read several depositions, two remarks must suffice.
First. They were offered to show matters which formed a part of the defendant’s case on his counterclaim in the first instance, and not to prove matters in rebuttal; they went to the whole ground of recovery. The opening of a case for the r.eception of such evidence, after the party has rested, lies in the discretion of the Court or Referee.
Second. The appellant has not seen fit to embody those depositions in the case, and the Court cannot, therefore, say that any injustice was done, nor whether, in any view, (if the discretion of the Referee is open to review here,) his ruling was an exercise of his discretion, in such a manner as should induce the Court to grant a new trial.
The judgment must be affirmed.